In the

# United States Court of Appeals

## For the Seventh Circuit

No. 07-2931

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

KIM LEE MILLBROOK,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 06 CR 40033—**Michael M. Mihm**, *Judge.*

ARGUED MAY 5, 2008—DECIDED JANUARY 23, 2009

Before CUDAHY, POSNER, and ROVNER, *Circuit Judges.*

ROVNER, *Circuit Judge.* Kim Lee Millbrook was con-
victed following a jury trial of drug and firearm offenses
as well as several counts of witness tampering and one
count of witness retaliation. The district court sentenced
him to 372 months' imprisonment to be followed by eight
years of supervised release. Millbrook appeals, challenging
the district court's refusal to suppress evidence found in
searches of his mother's home and a storage locker. He
also raises a number of evidentiary challenges and argues

that his case should be remanded for resentencing in light of changes to the United States Sentencing Guidelines regarding crack cocaine.

**I.**

In January of 2006, Millbrook's parole officer, Mitch Blackert, received a call from Millbrook's wife Kristina regarding a domestic dispute. In addition to telling Officer Blackert that she had obtained an order of protection against Millbrook, Kristina told him that she had seen Millbrook with a firearm and crack cocaine. This report prompted Officer Blackert to seek out Millbrook at his mother's house in Rock Island, Illinois.

According to Officer Blackert's trial testimony, when he arrived at the house, Millbrook was standing in front of his car. After relaying Kristina's allegations to Millbrook, Officer Blackert told him that he needed to search his car, to which Millbrook responded, "No, man." Millbrook then opened the driver's side door of his car and reached in under the front seat. Officer Blackert ordered Millbrook out of the car with his hands up, but Millbrook instead walked around to the passenger side of the car and retrieved his cell phone from the glove compartment, where Officer Blackert saw a baggie of marijuana. When Officer Blackert told Millbrook that he had seen the marijuana, Millbrook responded, "It's just some weed, man." Officer Blackert then told Millbrook to get out whatever was in the glove compartment so they could talk about it, and Millbrook responded by grabbing a black box and the marijuana from the glove compartment and fleeing.

Officer Blackert gave chase. The chase ended after 15 or 20 seconds when Millbrook disappeared behind a house. Millbrook walked back around the house with his hands in the air saying, "You ain't got me with nothing." Although Millbrook did in fact have nothing, a search of his flight path turned up the black box from his glove compartment, the baggie of marijuana, and several tissues with crack cocaine, all inside a brand new (with the city tag still attached), otherwise empty garbage can in the yard where Millbrook had run out of Officer Blackert's sight. Millbrook was then arrested and searched, and $1,039 in cash was recovered from his pocket.

After the incident with Officer Blackert, police obtained search warrants for Millbrook's mother's house in Rock Island. The search revealed two safes in the attic, and one in a bedroom closet. The two attic safes contained ammunition and a total of eight guns (three in one and five in the other). The remaining safe contained personal papers belonging to Millbrook's brother Theodore (who lived there), and a small amount of marijuana. There were three scales on the closet shelf near the safe. Based on the evidence uncovered in the search and another report from Kristina that Millbrook kept drugs and firearms in a storage unit, police obtained a warrant to search two storage units at AAA Self Storage in Rock Island. One unit contained a small safe with a box of ammunition inside.

After his arrest, Millbrook made a number of telephone calls to his brother Theodore from the Rock Island County

Jail. In the recorded calls, Millbrook tried to talk Theodore into taking responsibility for the guns. Millbrook was also recorded arguing with his wife, Kristina, and threatening to kill her when he was released from prison.

Before trial, Millbrook moved to suppress the evidence found in the trash can as well as the guns seized pursuant to the warrants. After an evidentiary hearing, the district court denied Millbrook's motion in its entirety. Before trial, Millbrook also moved in limine to exclude evidence of a previous drug conviction, but the district court denied his motion.

At trial, the jury heard from Officer Blackert, the other officers who assisted in Millbrook's arrest, Millbrook's brother Theodore, and Special Agent Jon Johnson. Agent Johnson testified that in his experience 10.6 grams of cocaine would "definitely" be for redistribution. He also testified that the small denominations comprising the $1,039 in cash found in Millbrook's pocket were consistent with drug distribution. The jury also heard the recorded conversation between Millbrook and Kristina.

The jury found Millbrook guilty on all counts of the superseding indictment.

## II.

### A. Motion to Suppress

Millbrook argues that the district court erred by denying his motion to suppress the evidence seized in the

searches of his mother's home and the storage units.[1]
When a search is executed pursuant to a facially valid
warrant, we review the district court's findings of
historical fact for clear error, and its legal conclusions,
including the underlying question of whether probable
cause for the warrant existed, de novo. *See United States
v. McIntire*, 516 F.3d 576, 577-78 (7th Cir. 2008) (resolving
"intra-circuit conflict" regarding proper standard of
appellate review when warrant has issued). On the
mixed question of whether the supporting affidavit
contained facts amounting to probable cause, we review
the issuing judge's conclusion with "great deference,"
without giving any weight to the district court's later
resolution of that question. *Id.*; *Ornelas v. United States*,
517 U.S. 690, 696-97 (1996). The district court agreed with
Millbrook that the warrant to search his mother's house
was inadequate, but upheld it nevertheless under the
good-faith exception to the exclusionary rule articulated
in *United States v. Leon*, 468 U.S. 897 (1984). The district
court upheld the second search under *Leon* as well,
without deciding whether the warrant itself was valid.

Probable cause to issue a search warrant is established
when the information in the supporting affidavit, taken
as a whole, provides information that would lead a rea-
sonable person to believe there is a fair probability that
contraband or evidence of a crime will be found. *Illinois
v. Gates*, 462 U.S. 213, 238-39 (1983); *United States v. Curry*,
538 F.3d 718, 729 (7th Cir. 2008).

---

[1] He has abandoned his challenge to the evidence recovered
as a result of his encounter with Officer Blackert.

The first affidavit (for the search of Millbrook's mother's home) recounts Kristina's allegation that Millbrook kept drugs and firearms at his mother's home. It also details Millbrook's encounter with Officer Blackert that led to the discovery of the crack cocaine and the marijuana. Although Millbrook's possession of crack tends to substantiate Kristina's claim that she had seen him with crack cocaine, it does little to lend credence to her bare assertion that Millbrook kept drugs and firearms at his mother's home. On that front, the affidavit simply recounts that in the affiant's experience, individuals who sell marijuana and controlled substances often keep drugs and other materials related to drug sales in their homes. It is thus a close call whether the affidavit as a whole provided probable cause. A close call coupled with the "great deference" afforded the issuing judge means that the warrant is likely valid.

We need not decide that issue, however, because the fruits of the search are undoubtedly admissible, as the government urges, under the good-faith exception articulated in *Leon*. Under *Leon*, it is inappropriate to suppress the fruits of a search conducted pursuant to a later-invalidated warrant provided the executing officers relied on the warrant in good faith. *Leon*, 468 U.S. at 922-23; *United States v. Woolsey*, 535 F.3d 540, 546 (7th Cir. 2008). That the officers obtained a warrant is itself prima facie evidence of good faith. *Leon*, 468 U.S. at 922; *United States v. Watts*, 535 F.3d 650, 657 (7th Cir. 2008). Millbrook can rebut that presumption by demonstrating, as relevant here, that the supporting affidavit was " 'so lacking in indicia of probable cause as to render official

belief in its existence entirely unreasonable.'" *Leon*, 468 U.S. at 923 (quoting *Brown v. Ill.*, 422 U.S. 590, 611 (1975) (Powell, J., concurring)).

Neither the supporting affidavit for the search of his mother's home nor the affidavit to search the storage unit fall into this category. As discussed above, the first affidavit detailed a tip from Kristina that Millbrook stored drugs and weapons at his mother's home. Further investigation turned up Millbrook outside of the home, carrying over 10 grams of crack cocaine. This gave some credence to Kristina's assertions, and the affidavit detailing this information was certainly not so utterly lacking in facts supporting probable cause that no reasonable officer could rely upon it. Likewise, the affidavit requesting a warrant for the storage unit contained facts supporting the existence of probable cause: the first search had indeed turned up a number of weapons, a fact which tended to make Kristina's assertions about the storage unit more believable. We thus reject Millbrook's claim that the evidence uncovered in the searches should have been suppressed. *United States v. Carmel*, 548 F.3d 571, 576-77 (7th Cir. 2008).

### B. Introduction of Rule 404(b) Evidence

Millbrook also claims that the district court erred in admitting under Federal Rule of Evidence 404(b) evidence of a 1994 conviction for delivery of a controlled substance. Before trial, Millbrook moved in limine to exclude evidence of the drug sale and resulting conviction. In denying Millbrook's motion, the district court accepted

the government's contention that the prior conviction was relevant to some other purpose beyond Millbrook's propensity to sell crack. The court also concluded that the 12 years that had elapsed since the prior conviction did not amount to an "excessive" period of time. We review the district court's evidentiary decision for an abuse of discretion. *United States v. Reyes*, 542 F.3d 588, 592 (7th Cir. 2008). Even erroneous evidentiary rulings will not be overturned if the resulting error was harmless. *United States v. Wantuch*, 525 F.3d 505, 513 (7th Cir. 2008).

Rule 404(b) prohibits the admission of prior crimes or bad acts to prove that the defendant has a propensity to commit crimes and acted in conformity therewith. Fed. R. Civ. P. 404(b). Such evidence may be admitted, however, if it is offered for other purposes, such as establishing intent, knowledge, motive, or opportunity. To be admissible, the evidence of a prior conviction or bad act must meet the following criteria: (1) it must be directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged; (2) it must be similar enough and close enough in time to be relevant to the matter in issue; (3) it must be sufficient to support a jury finding that the defendant committed the similar act; and (4) its probative value must not be substantially outweighed by the danger of unfair prejudice. *E.g., Watts*, 535 F.3d at 657-58.

Millbrook maintains that the evidence of his prior conviction fails on the first, second, and fourth prongs of the inquiry. He argues that, given the differences between his prior offense and the charged offense, the

previous conviction served no purpose beyond demonstrating his propensity to engage in criminal conduct. The government contends that Millbrook's defense—that he possessed the crack but never intended to distribute it—made the prior conviction particularly relevant to establishing intent.

As for whether the evidence was relevant to any matter in issue beyond propensity, we have repeatedly recognized that evidence of a prior drug conviction is "especially relevant and probative when" a defendant concedes possession of narcotics but denies the drugs were intended for anything beyond personal use. *United States v. Puckett*, 405 F.3d 589, 596 (7th Cir. 2005); *accord United States v. Harris*, 536 F.3d 798, 808 (7th Cir. 2008); *United States v. Hurn*, 496 F.3d 784, 787 (7th Cir. 2007).

Although the line between propensity and intent is a fine one, the district court was within its discretion to conclude that Millbrook's prior conviction was relevant to the disputed issues of Millbrook's knowledge and intent. *See United States v. Chavis*, 429 F.3d 662, 673 (7th Cir. 2005) (Cudahy, J., concurring) ("To meet the test of Rule 404(b), there must be a showing that an issue has been joined as to intent, or another of the 404(b) categories, discrete from a showing of mere propensity."). In light of Millbrook's defense, the prior conviction was admissible to cast doubt on his assertion that he never intended to distribute the 10.6 grams of crack and to shed light on his knowledge of distribution methods. Although the court could have been more thorough in its discussion on this point, it is clear that it listened to the arguments on both

sides before concluding that the government "made a valid showing under knowledge, plan, lack of mistake, or accident."

The question remains, however, whether the considerable prejudicial impact of the evidence outweighed its probative function, particularly in light of the elapsed time between the two charges and the differences between the two crimes. The 12-year gap between this event and Millbrook's possession of 10.6 grams of crack certainly diminishes the probative value of the prior sale. However, a temporal gap need not be fatal to admissibility, especially when, as is the case here, the defendant has spent much of the intervening time incarcerated. *See United States v. Ross*, 510 F.3d 702, 713 (7th Cir. 2007) (noting that five and six-year time gaps were "a bit misleading" since the defendant "could not have participated in robberies during many of the intervening years as he was incarcerated"); *see also United States v. Macedo*, 406 F.3d 778, 793 (7th Cir. 2005) (upholding court's admission of evidence of cocaine sale nine years before). Focusing on the time-frame itself, the government parades out cases admitting prior bad acts that occurred as many as ten and 13 years before the charged crimes. *See United States v. Hurn*, 496 F.3d 784, 788 (7th Cir. 2007) (10-year-old drug conviction relevant to intent when defendant claimed he was an innocent bystander to cocaine distribution); *United States v. Polichemi*, 219 F.3d 698, 709-10 (7th Cir. 2000) (10-year gap upheld in fraud case in part because prior behavior provided evidence of intent); *United States v. Wimberly*, 60 F.3d 281, 285 (7th Cir. 1995) (allowing 13-year gap when sexual molestation crimes were "virtu-

ally identical"). Given the large temporal gap here, the government has an increased obligation to demonstrate the earlier conviction's continued relevance. Although we think the case a very close one, we conclude that the district court was within its substantial discretion to admit the evidence of Millbrook's prior sale. The jury heard evidence that in 1993, Millbrook flagged down an undercover police officer and offered to sell him a 1/2-gram rock of crack cocaine for $50. As discussed above, this incident sheds some light on Millbrook's intent with the 10.6 grams recovered in this case, as well as his knowledge of cocaine distribution practices. We emphasize, however, that the 12-year gap puts this case at the outer limits of what is permissible under Rule 404(b). *See Polichemi*, 219 F.3d at 709 (characterizing conduct that occurred more than 10 years prior to charged crime as "at the outer edges" of Rule 404(b)'s requirements); *cf. United States v. Garcia*, 291 F.3d 127, 137-38 (2d Cir. 2002) (rejecting government's contention that drug transaction occurring 12 years prior was admissible).

We are also unconvinced by Millbrook's claim that the events are not sufficiently similar because the prior conviction involved a hand-to-hand transaction and his current conviction stems from his possession of crack. The similarity inquiry centers on the purpose for which the conviction is offered. *Macedo*, 406 F.3d at 793. The fact that Millbrook had previously sold a 1/2-gram rock of cocaine undermined to some extent his vigorous attack of Agent Johnson's testimony that Millbrook possessed more than a personal use quantity of crack, and established his knowledge of the value of smaller amounts of crack. *See United States v. Perkins*, 548 F.3d 510, 514 (7th Cir. 2008)

("His 1998 and 2003 convictions for possession of less than 15 grams of cocaine are probative of his knowledge that even one gram has value."); *United States v. Jones*, 455 F.3d 800, 809 (7th Cir. 2006) (eight-year-old drug trafficking conviction relevant and probative of defendant's "knowledge of the drug trade and the practices of drug dealers [and his] . . . knowledge of the commercial value of even small amounts of the drug and therefore his intent to sell the lesser amount."). We are therefore unpersuaded by Millbrook's argument that the prior conviction is too dissimilar to be admissible. *See Macedo*, 406 F.3d at 793 (rejecting defendant's claim that prior act was too dissimilar because it involved cocaine and current conviction was for methamphetamine); *United States v. Mounts*, 35 F.3d 1208, 1214-15 (1994) (upholding admission of prior attempt to purchase cocaine despite "significant" differences from charged conduct).

Finally, we agree with the government that the probative value of the evidence was not outweighed by its prejudice, which was lessened by the district court's limiting instructions. The district court repeatedly cautioned the jury to consider the prior conviction only for the limited purpose of evaluating Millbrook's intent or demonstrating his knowledge or absence of mistake, thereby reducing the possibility that Millbrook was unfairly prejudiced by the evidence. *Jones*, 455 F.3d at 809.

## C. Expert Testimony

Millbrook next contends that the district court abused its discretion by allowing Agent Jon Johnson to testify as

an expert regarding the thousand dollars in cash recovered in Millbrook's pocket. Over Millbrook's objection, the district court allowed Agent Johnson to testify that crack addicts, typically strapped for cash, often purchase crack using small-denomination bills referred to as "street bills." Agent Johnson opined that the number of small bills Millbrook was carrying in his $1039 bundle ($49 in one-dollar bills, $150 in five-dollar bills, $60 in tens, and $280 in twenties) was consistent with drug distribution.

The critical inquiry when considering the admissibility of expert testimony is whether the testimony will assist the jury to resolve a disputed issue. Federal Rule of Evidence 702 provides that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of opinion or otherwise." We have consistently held that because most jurors are unfamiliar with the specifics of the drug trade, expert testimony related to the mechanics of drug sales is permissible. *E.g.*, *United States v. Glover*, 479 F.3d 511, 516 (7th Cir. 2007); *United States v. Cruz-Velasco*, 224 F.3d 654, 660 (7th Cir. 2000) (collecting cases).

Millbrook concedes, as he must, that jurors are unlikely to know how most drug users tend to pay for their drugs and that Agent Johnson's testimony on that point is therefore helpful. He contends, however, that the average juror certainly understands "what it means to carry cash in one's pocket." Given this, Millbrook believes that

Agent Johnson's testimony about the large sum of cash was unhelpful.

Millbrook's argument misses the mark. Undoubtedly the jury needs no assistance in comprehending the simple fact that Millbrook was carrying just over $1,000 in his pocket. That was not the point of Agent Johnson's testimony. He explained the potential significance of both the cash and the small bills, two areas where his expertise as a Drug Enforcement Agent unquestionably assisted the jury in understanding a disputed issue—namely, whether Millbrook had $1000 dollars in his pocket because his mother had given him $800 to pay a utility bill, as he claimed, or because he was carrying the proceeds of drug sales. *See United States v. Smart*, 98 F.3d 1379, 1390 n.15 (D.C. Cir. 1996) (expert testimony on "large amounts of cash in small-denomination bills" proper); *United States v. Peters*, 15 F.3d 540, 544-45 (6th Cir. 1994) ("Expert testimony indicated that amount of drugs, *the currency denominations*, and the presence of a pager were consistent with drug distribution.") (emphasis added).

### D.  Witness Retaliation

Millbrook next argues that there was insufficient evidence to support his conviction for witness retaliation. In reviewing the sufficiency of the evidence, we ask only whether, viewing the evidence in the light most favorable to the government, there is *any* evidence from which a rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. *E.g.*, *United States v. Jackson*, 540 F.3d 578, 593 (7th Cir. 2008).

Millbrook was convicted of violating 18 U.S.C. § 1513(b)(2), which provided[2] in relevant part as follows:

> (b) Whoever knowingly engages in any conduct and thereby causes bodily injury to another person . . . or threatens to do so, with intent to retaliate against any person for—
>
> . . .
>
> (2) any information relating to the commission or possible commission of a Federal offense or a violation of conditions of probation, supervised release, parole, or release pending judicial proceedings given by a person to a law enforcement officer;
>
> or attempts to do so, shall be fined under this title or imprisoned not more than 10 years, or both.

18 U.S.C. § 1513(b)(2) (West 2007).

Millbrook argues that although the jury heard him threaten Kristina in the recorded phone call, the government failed to prove a link between his threats and her provision of information. The jury heard a recorded conversation between Kristina and Millbrook in which the two were arguing over Kristina's decision to sell Millbrook's car. Their profanity-laced exchange over the car escalated into a series of direct insults that included the following exchange, which we quote directly from the

---

[2] After Millbrook's conviction, section 1513(b)(2) was amended to increase the maximum penalty for a violation from ten to twenty years. *See* Pub. L. 110-177, § 206(3)(B) (2008).

transcript of the call ("KM" refers to Kim Lee Millbrook and "TM" refers to Kristina Millbrook):

KM:  Bitch you got me locked up. You stinkin ho[.]

TM:  Sure, sure didn't[.]

KM:  But your day is comin, I betch you that. I betch your day come ho. I betch you that.

TM:  Yup.

KM:  It's comin. It's comin. It's comin bitch.

. . .

KM:  You punk motherfucker.

TM:  [D]on't give a fuck about you.

KM:  Punk ass ho, what the fuck is you talkin' about[?] Bitch gonna talk shit to me, I'm locked up because of you mother fucker.

TM:  You sure am. (Inaudible)

KM:  You punk ass ho. I betch you I get your bitch ass.

TM:  (Inaudible) go to prison cause of me.

. . .

KM:  All I want to do is walk the street.

TM:  (Inaudible) court.

KM:  Then come to court bitch. I'm gonna tell 'em the guns was yours you stinkin ho. Bitch, you're the one that tell 'em where they was at.

TM:  Yeah.

KM:  Bitch. You're the one that gave em the keys. You're the one tell 'em, where the shit was at. It was your shit bitch.

. . .

KM:  I'm gonna kill you ass ho. I'm gonna getch you, I swear on my mama. I'm gettin you. I'm gonna getch you. Now you can take it as you want.

TM:  I'll take it (inaudible).

KM:  You['re] done, you['re] done, the day I walk the street bitch your ass is out ho.

TM:  I don't give a fuck.

Millbrook argues that although he threatened Kristina in the recorded call, no rational jury could have concluded that he did so as a response or in retaliation for the information she provided to Officer Blackert, as required by the witness retaliation statute. We disagree. Millbrook lashes out at Kristina for her role in his arrest, and goes on to threaten her in no uncertain terms. It is a fair inference that Millbrook issued the menacing "I'm gonna getch you" warning in response to Kristina's decision to tell Officer Blackert that Millbrook possessed drugs and weapons in violation of the terms of his parole. Clearly this interpretation of the conversation falls within the statutory definition of witness retaliation: threatening to cause bodily injury to retaliate for information given to law enforcement regarding probation violations. *See* 18 U.S.C. § 1513(b)(2). Millbrook's spin on the conversation—that although Millbrook and Kristina exchanged insults and displayed the ugly side of their

rocky relationship, Millbrook was not threatening Kristina *in response to* her provision of information to the police some four months prior—may be plausible, but the jury was not required to accept it. *Maher v. City of Chi.*, 547 F.3d 817, 825 (7th Cir. 2008).

## E. Cumulative Error

Millbrook next contends that even if none of the errors he alleges warrant reversal when considered in isolation, together they amount to cumulative error necessitating reversal. *See, e.g., United States v. Smith*, 502 F.3d 680, 690 (7th Cir. 2007) ("Although any single error by itself may be insufficient to taint a jury, the combined effect of multiple erroneous rulings may result in significant harm necessitating another trial."). The obvious problem with this line of argument is that, as discussed above, we do not believe any of the district court's trial rulings amounted to an abuse of discretion. There is thus no reason to believe that Millbrook received an unfair trial. *See United States v. Price*, 520 U.S. 753, 761 (2008).

## F. Sentencing

Lastly, Millbrook argues that resentencing is necessary in light of the Supreme Court's decision in *Kimbrough* recognizing a district court's authority to take into account the sentencing disparity between crack and powder cocaine offenses when fashioning a sentence under 18 U.S.C. § 3553(a). *See Kimbrough v. United States*, 128 S. Ct. 558, 573-75 (2007). He also claims that Amendment 706 to

the Sentencing Guidelines—which reduced the disparity between crack and powder cocaine offenses—renders his sentence invalid.

We disagree. Millbrook was sentenced as a career offender, which means that the crack and powder cocaine disparity in the Guidelines did not affect his sentence. His base offense level was determined, not by drug quantity, but by the statutory maximum applicable to his offense under 21 U.S.C. § 841(b)(1)(A). *See* U.S.S.G. § 4B1.1(b). Thus, any discrepancy that may arise under § 4B1.1 arises on account of § 841(b) itself—congressional legislation that, in contrast to the Sentencing Guidelines, is not advisory. Thus, *Kimbrough's* discussion of a district court's discretion to take into account the crack/powder disparity is of no consequence to a defendant sentenced under § 4B1.1 as a career offender. *See United States v. Harris*, 536 F.3d 798, 813 (7th Cir. 2008) (collecting cases). Neither is Amendment 706, which applies to the drug quantity table in U.S.S.G. § 2D1.1, not the career offender provision in § 4B1.1. *Harris*, 536 F.3d at 813; *see also United States v. Clay*, 524 F.3d 877, 878-79 (8th Cir. 2008) ("Although the recent amendments to the sentencing guidelines lowered the offense levels associated with crack in the drug quantity table in U.S.S.G. § 2D1.1, they did not change the career offender provision in § 4B1.1 . . . .").

Although the ultimate guideline range recommended by § 4B1.1(b) itself is still advisory, *Harris*, 536 F.3d at 813, there is nothing in the record to suggest the district court misunderstood its authority to depart from the range specified by the career-offender guidelines. The district

court here considered the factors in § 3553(a) and concluded after reviewing Millbrook's lengthy criminal history that Millbrook "seemed to be the kind of person that Congress was thinking of . . . when they created this category of armed career criminal." We are thus equally unpersuaded by Millbrook's assertion that remand for resentencing is warranted under *Gall v. United States*, 128 S. Ct. 586 (2007), which was decided several months after his sentencing. *Gall*, which reiterates the proper post-*Booker* procedure for imposing a sentence, is not helpful to Millbrook since there is no suggestion that his guideline range was incorrectly calculated or that the district court failed to make an "individualized assessment based on the facts presented." *Id.* at 97.

### III.

For the foregoing reasons, we AFFIRM Millbrook's convictions and sentence.