In the

# United States Court of Appeals

### For the Seventh Circuit

No. 09-1175

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

DAVID A. ELST,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 1:08-cr-00117-WCG-1—**William C. Griesbach**, *Judge.*

ARGUED JUNE 5, 2009—DECIDED AUGUST 25, 2009

Before MANION, ROVNER, and TINDER, *Circuit Judges.*

TINDER, *Circuit Judge.* On January 16, 2008, Steven Scully, an investigator with the City of Green Bay Police Department in Wisconsin, obtained an antici-patory search warrant for the home of David A. Elst. The warrant was executed on January 18, 2008, after a confidential informant purchased cocaine (under con-trolled conditions) at the Elst residence. The officers executing the warrant found cash, including prerecorded currency used in the controlled buy, and 700 grams of

cocaine. An indictment was returned in the district court charging Elst with conspiracy to distribute cocaine and possession of cocaine with the intent to distribute it.

Elst moved to suppress the fruits of the search. The magistrate judge held an evidentiary hearing and recommended that the motion be denied. Elst objected, and the district court adopted the recommendation. The court concluded that the warrant failed to establish probable cause that a triggering event—the delivery of a controlled substance at the Elst residence—would occur or when it would occur, but nonetheless determined that the officers relied in good faith on the warrant. It therefore determined that the good faith exception to the exclusionary rule set forth in *United States v. Leon*, 468 U.S. 897 (1984), applied.

Following the denial of his suppression motion, Elst pled guilty to the conspiracy count and was sentenced to 92 months' imprisonment. The other count was dismissed on the government's motion. Having reserved the right to do so, Elst appeals the denial of his motion to suppress.

## I.  The Search

On January 16, 2008, Investigator Steven Scully, a member of the Brown County, Wisconsin drug task force, obtained (from a Wisconsin state court judge) an anticipatory search warrant for the premises occupied or owned by David A. Elst at 1566 North Road in the Village

of Ashwaubenon in Brown County, Wisconsin. Investigator Scully provided an affidavit in support of the warrant, indicating that a confidential informant (CI) had made three controlled buys under the supervision of Scully and other members of the Brown County Drug Task Force. In the first, on December 3, 2007, the CI purchased one ounce of cocaine from Gregory Madsen at Madsen's residence at an apartment complex on River Bend Terrace in the Village of Bellevue, Wisconsin. On December 18, in the second buy, the CI purchased a half ounce of cocaine from Madsen, again at Madsen's apartment.

The third controlled buy, on January 10, 2008, occurred at Elst's residence at 1566 North Road. Scully's affidavit stated that the CI arranged with Madsen to purchase two ounces of cocaine from Madsen and his supplier. Madsen had told the CI that they would be going to the North Road address to complete the transaction. Investigator Scully and other task force members conducted surveillance as the CI picked up Madsen at his residence and drove to Elst's residence. There they observed Madsen enter the residence and return to the CI's vehicle. Shortly thereafter, another vehicle arrived, and a male and female exited it and entered Elst's apartment. Approximately ten minutes later, Madsen exited the residence and returned to the CI's vehicle. The CI reported to Scully later that he gave Madsen $1,600 for the cocaine as they pulled into the driveway of the Elst residence, and that after the two individuals had met with Madsen in the residence, Madsen exited the residence and provided the CI with what was later

found to be 55.2 grams of cocaine, and $49. The CI remained under surveillance at all times.

Paragraph 7 of Scully's January 16, 2008 affidavit—which was titled "Affidavit in Support [of] Anticipatory Search Warrant"—stated:

> Your affiant anticipates that CI will go to 1667 Riverbe[n]d Terrace and pick up Gregory Madsen and travel to 1566 North Rd. to purchase cocaine. If Madsen or another person delivers a controlled substance or a substance represented to be a controlled substance to the CI, and the delivery occurs at 1566 North Rd. or the person making the delivery comes from or returns to 1566 North Rd., then your affiant requests this warrant be active for a search of the premises.

The state judge issued the warrant on the same day as Scully's affidavit.

The warrant was executed on January 18, 2008. That day the CI, at Scully's direction, arranged to purchase cocaine from Madsen. Madsen told the CI to meet him at the North Road address. Before the controlled buy, the CI and his vehicle were searched for currency and contraband and the CI was provided with $1,580 in prerecorded "buy money." The CI then placed a phone call to Madsen who told the CI that he was already at the North Road address. When the CI pulled up to the Elst residence, Madsen was waiting outside for him. Madsen entered the CI's vehicle and handed the CI a baggie apparently containing cocaine, and the CI gave

Madsen the buy money provided by Scully. Madsen then entered the residence at 1566 North Road.[1]

After the controlled buy, the CI left the residence to meet with Investigator Scully in a nearby parking lot. The CI related what had occurred and turned over the cocaine just purchased. Investigator Scully and other task force members proceeded to the Elst residence. There, the other officers executed the warrant and searched the residence. They found more than $4,500 in cash, including prerecorded currency used in the transaction that evening, and 700 grams of cocaine.

## II.  Does the Good Faith Exception Apply?

The only issue on appeal is whether the district court erred in relying on the good faith exception to the exclusionary rule to deny the motion to suppress. We review the district court's findings of fact for clear error

---

[1] The point about when Madsen was observed entering the residence is the only trial court finding that Elst disputes. The magistrate judge's report and recommendation (later adopted by the district judge) indicates that Madsen briefly entered the CI's vehicle and then entered the residence before returning a short time later with the cocaine. The transcript of the suppression hearing discloses that this finding is erroneous. Investigator Scully testified that the CI told him that Madsen was waiting outside when the CI arrived at the Elst residence. Scully did not testify that the CI said anything about Madsen going into the residence before giving the CI the cocaine. This error, however, is not consequential to the good faith determination.

and its legal conclusions de novo. *United States v. Millbrook*, 553 F.3d 1057, 1061 (7th Cir. 2009).

But as we consider whether the good faith exception applies to this search, we must keep in mind how an anticipatory warrant differs from other search warrants. "An anticipatory warrant is 'a warrant based upon an affidavit showing probable cause that at some future time (but not presently) certain evidence of crime will be located at a specified place.'" *United States v. Grubbs*, 547 U.S. 90, 94 (2006) (quoting 2 W. LaFave, *Search and Seizure* § 3.7(c), at 398 (4th ed. 2004)). Such warrants generally "subject their execution to some condition precedent other than the mere passage of time—a so-called 'triggering condition.'" *Id.* An anticipatory warrant requires the issuing judge to determine "(1) that it is *now probable* that (2) contraband[ or] evidence of a crime . . . *will be* on the described premises (3) when the warrant is executed." *Id.* at 96 (emphasis in original). Thus, such a warrant must satisfy two requirements: there is a fair probability that contraband or evidence of a crime will be found in the place to be searched if the triggering condition occurs *and* there is probable cause to believe that the triggering condition will occur. *Id.* at 96-97.

We are not asked to decide whether the search warrant issued in this case was supported by probable cause—the district court concluded that it wasn't, and the government doesn't dispute that on appeal. However, as our discussion may suggest, a fair argument could have been made that the warrant here was not defective at all. After all, the affidavit supporting the issuance of the warrant was narrowly conditioned on the occurrence

of a future event, a drug delivery at the Elst residence, which did subsequently occur. Nonetheless, we will accept the government's concession—our focus will be on whether the officers acted in good faith reliance on the presumptively defective warrant.

Under *United States v. Leon*, 468 U.S. 897 (1984), it is inappropriate to suppress evidence obtained pursuant to a later-declared invalid warrant if the executing officers reasonably relied on the warrant. *Id.* at 922-23; *see also Millbrook*, 553 F.3d at 1061-62. That the officers obtained a warrant is prima facie evidence of good faith. *Millbrook*, 553 F.3d at 1062. A defendant may rebut this by presenting evidence to establish that: (1) the issuing judge "'wholly abandoned his judicial role' and failed to 'perform his neutral and detached function,' serving 'merely as a rubber stamp for the police,'" *United States v. Olson*, 408 F.3d 366, 372 (7th Cir. 2005) (quoting *Leon*, 468 U.S. at 914); (2) the affidavit supporting the warrant "was 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable,'" *id.* (quoting *Leon*, 468 U.S. at 923); or (3) the issuing judge "was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth," *Leon*, 468 U.S. at 923. Elst attempts to rebut the presumption of good faith but fails.

Elst first contends that the good faith exception is inapplicable because Investigator Scully did not allege any facts to establish probable cause that contraband was on a "sure course" to the Elst residence. Along those lines, Elst argues that Scully's affidavit contained

no facts to demonstrate that a triggering condition would occur, and consequently, the executing officers' belief in the existence of probable cause was entirely unreasonable.[2]

Regarding the "sure course" requirement, some circuits—even ours—have required a showing that the contraband was on a "sure course" to the place to be searched to support a finding of probable cause for an anticipatory warrant. *See United States v. Dennis*, 115 F.3d 524, 530 (7th Cir. 1997) (collecting cases). The purpose of the "sure course" requirement is to prevent law enforcement authorities or third parties from delivering or causing to be delivered contraband to a residence to "create probable cause to search the premises where it otherwise would not exist." *United States v. Brack*, 188 F.3d 748, 757 (7th Cir. 1999) (quoting *Dennis*, 115 F.3d at 529). "The requirement ensures that a sufficient nexus between the parcel and the place to be searched exists." *Id.* Thus, we have implied that the "sure course" require-

---

[2] Elst suggests that the state court judge abdicated his judicial role by failing to determine when and if the triggering event would occur. However, Elst really isn't claiming that the judge "wholly abandoned his judicial role" in issuing the warrant and merely acted as a rubber stamp for police. He offers no evidence to establish that the judge failed to consider whether Scully's affidavit established probable cause to issue a warrant. Nor does Elst present any information to suggest that the judge failed to act as a neutral and detached judicial officer. At bottom, Elst's suggestion that the judge abandoned his judicial role is simply a variation on his contention that the affidavit was entirely lacking in indicia of probable cause.

ment is just one way of satisfying the requirement of a sufficient nexus between the contraband and the place to be searched. *See id.* (stating that even if the "sure course" requirement applied where the defendant himself delivered the drugs to his hotel room, the warrant affidavit clearly showed a nexus between the drugs and the hotel room); *see also Dennis*, 115 F.3d at 530 (indicating that proof that "the contraband was on a 'sure course' to the destination to be searched would demonstrate a sufficient nexus" between the contraband and the place to be searched). Other courts have explicitly said so. *See, e.g., United States v. Penney*, No. 05-6821, 2009 WL 2408721, at *12 (6th Cir. Aug. 7, 2009) (indicating that the "sure and irreversible course" standard was adopted to govern typical anticipatory search warrants—those sought to conduct searches triggered by a police-controlled delivery); *United States v. Rowland*, 145 F.3d 1194, 1203 n.3 (10th Cir. 1998) (recognizing that the " 'sure course' " standard is one way of satisfying the traditional nexus requirement of probable cause").

Where the government is not involved in delivering or causing to be delivered the contraband, we doubt that the "sure course" requirement applies. *See Brack*, 188 F.3d at 757; *see also Penney*, 2009 WL 2408721, at *12 (declining to apply the "sure and irreversible course" standard to a search warrant supported by evidence of prior illicit drug activity in addition to the drug deal arranged by the CI that connected the residence to be searched with criminal activity); *Rowland*, 145 F.3d at 1203 n.3 ("It is unclear how, or whether, the heightened 'sure course' requirement applies . . . outside the controlled

delivery context."). Regardless, Scully's affidavit clearly conditions the search on the future occurrence of a drug delivery to the CI at the Elst residence, and the search did not take place until law enforcement confirmed that such a deal did in fact take place. And the choice of that location was made by Madsen, not the CI or law enforcement. So reliance on the warrant is not derailed by "sure course" concerns.

That brings us to Elst's second contention: The good faith exception does not apply because Scully created the circumstances needed to establish probable cause to believe that contraband was on a "sure course" to Elst's residence. While the CI contacted Madsen on January 18 at Scully's direction, neither Scully nor another law enforcement officer caused the delivery of the cocaine to Elst's residence. Neither Scully nor another officer had control over the cocaine that the CI purchased from Madsen that evening. And, as stated, neither Scully, another officer, nor the CI determined the location of either of the drug transactions at Elst's residence. Madsen did. Scully did not create the triggering condition; nor did he create probable cause to search. We have no reason to believe there was an abuse of the anticipatory warrant in this case. *See Dennis*, 115 F.3d at 529-30 (discussing the greater potential for abuse of anticipatory warrants than other warrants because "the government or a third party, acting either intentionally or accidentally, could mail a controlled substance to a residence to create probable cause to search the premises where it otherwise would not exist"); *United States v. Leidner*, 99 F.3d 1423, 1431 (7th Cir. 1996) (Wood, J., concurring)

(discussing problem of government manipulation unique to anticipatory warrants). Therefore, this effort by Elst to rebut the presumption that the officers acted in good faith gets him nowhere.

But we are still left with Elst's assertion that Scully's affidavit contained no facts to demonstrate that a triggering condition would occur. (Elst does not dispute that the affidavit identified a triggering event.) However, he has not shown that the affidavit was so lacking in indicia of probable cause as to make entirely unreasonable a belief that probable cause existed.

Scully's affidavit does contain some indication of illegal drug activity at Elst's residence. His affidavit reveals that Scully had been conducting an investigation for over one month using the CI which included controlled buys on three separate occasions from Madsen during the investigation. The controlled buys in December 2007 took place at Madsen's residence, each involving less than one ounce of cocaine. The affidavit stated that the CI had related to Scully that Madsen typically had an ounce or less at his residence. The most recent controlled buy, on January 10, 2008, however, took place at 1566 North Road. This deal was for two ounces of cocaine—a greater quantity than that involved in the earlier buys and more than the amount that the CI had said Madsen typically had at his apartment. The affidavit further stated that the CI drove Madsen to 1566 North Road where the CI pulled into the driveway, Madsen entered the residence, and he returned a short time later to tell the CI to move his vehicle

because "they would be coming home shortly." According to the affidavit, as Madsen predicted, a brief time passed and then another vehicle pulled into the driveway and a male and female exited and entered the Elst residence. A short time after that, Madsen left the residence and returned to the CI's vehicle, handing him a baggie containing 55.2 grams of cocaine and $49 of the $1,600 the CI had previously given him.

These facts suggest that although Madsen typically had an ounce of cocaine at home, he had to go elsewhere to obtain greater quantities, and the Elst residence at 1566 North Road was one place where he had done so very recently. Investigator Scully's anticipation that Madsen would again deliver cocaine to the CI at 1566 North Road does not amount to probable cause. Nonetheless, his anticipation is based on the ongoing drug investigation and the CI's continuing relationship with Madsen which are suggestive of future transactions. Scully's anticipation is also based on his training, experience, and participation in other narcotics investigations. Experienced law enforcement officers (as well as experienced magistrates) are permitted to draw reasonable inferences from the facts based on their training and experience. *See, e.g.*, *United States v. Curry*, 538 F.3d 718, 729 (7th Cir. 2008) (stating that in issuing a search warrant a magistrate judge is entitled to draw reasonable inferences about where the evidence is likely to be found); *United States v. Reed*, 443 F.3d 600, 603 (7th Cir. 2006) (indicating that in determining whether probable cause exists officers are entitled to draw reasonable inferences based on their training and experience). All of these considerations support the conclusion that

Scully's affidavit was not so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.

Furthermore, once the "triggering condition" occurred, the officers could have reasonably relied in good faith on the warrant. The occurrence of the triggering condition can establish probable cause for the search. *See Grubbs*, 547 U.S. at 97. The "triggering condition" occurred before the officers executed the warrant: Madsen delivered cocaine to the CI outside 1566 North Road and immediately thereafter entered the residence there. The fact that Madsen was already waiting outside when the CI arrived and then immediately entered the residence, apparently with the $1,500 the CI had given him, suggests that Madsen obtained the cocaine inside the Elst residence (and returned with the money to pay his source, perhaps). Otherwise, there was no reason for Madsen to meet the CI at 1566 North Road—he just as easily could have had the CI meet him at his apartment or some other location. Once the triggering condition occurred, the officers had probable cause to search the Elst residence for cocaine, U.S. currency, and other items used in connection with drug transactions. It should be noted that if Scully, instead of relying on the previously obtained anticipatory warrant, had returned to (or even telephoned) the judge who had issued the warrant (or had contacted another judge, for that matter), he could have presented plenty of probable cause to obtain a "regular" search warrant for the Elst residence based on just the events that had taken place there that evening, to say nothing of the prior transactions.

Finally, Elst makes a conclusory, undeveloped, one-paragraph argument that Scully knew there was no triggering condition which he could allege and thus Scully was reckless and dishonest in representing that there was probable cause to believe contraband was on a "sure course" to Elst's residence. Perfunctory and undeveloped arguments as well as arguments unsupported by pertinent authority are waived. *See United States v. Hook*, 471 F.3d 766, 775 (7th Cir. 2006). Elst makes this argument only in his summary of arguments section; he does not develop it in his argument section, nor does he cite any pertinent legal authority. Therefore, he has waived the argument that Scully was reckless and dishonest in portraying that probable cause existed.

Elst has not rebutted the presumption that the officers acted in objective good faith reliance on the warrant. Exclusion of evidence is an "extreme sanction" and "applies only where it 'results in appreciable deterrence.'" *Herring v. United States*, 129 S. Ct. 695, 700 (2009) (citations omitted). It would not here. At worst, Investigator Scully negligently failed to include one obvious fact in his otherwise complete affidavit—that the CI would make yet another effort to purchase drugs from Madsen as he had in the past. (Perhaps that fact could have been inferred from the "If Madsen . . . delivers a controlled substance . . . at 1566 North Rd." language from the affidavit.) But even without that allegation in the affidavit, the officers should not be deprived of good faith reliance on the warrant. Hence, as the district court properly found, suppression would be inappropriate in this case.

### III.  Conclusion

We uphold the denial of Elst's motion to suppress and Affirm the district court's judgment.