In the

# United States Court of Appeals
## For the Seventh Circuit

No. 22-3271

FELIX FRANCO and FRANCO EXPRESS, INC.,
An Illinois Domestic Corporation,

*Plaintiffs-Appellants*,

*v.*

RICHLAND REFRIGERATED SOLUTIONS, LLC,

*Defendant-Appellee*.

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 3:21-cv-00048 — **James D. Peterson**, *Chief Judge*.

ARGUED SEPTEMBER 27, 2023 — DECIDED FEBRUARY 12, 2025

Before SYKES, *Chief Judge*, and FLAUM and LEE, *Circuit Judges*.[1]

---

[1] Circuit Judge Flaum passed away on December 4, 2024, and did not participate in the decision of this case, which is being resolved under 28 U.S.C. § 46(d) by a quorum of the panel.

LEE, *Circuit Judge*. Felix Franco, a commercial truck driver, was asleep in the bunkbed area of his parked semi-trailer truck when it was hit by another truck. Behind the wheel of the offending vehicle was an employee of Richland Refrigerated Solutions, LLC. Invoking diversity jurisdiction, Franco[2] sued Richland, alleging that its negligence caused him to injure his back, necessitating surgery. For its part, Richland acknowledged that its employee's negligence had caused the accident but disputed that the accident was the source of Franco's injury. The case went to trial, and a jury entered a verdict in Richland's favor. Franco appeals the district court's pretrial rulings, jury instructions, and denial of his post-trial motions. We affirm in all respects.

## I. Background

Franco had parked his semi-trailer truck and was sleeping in the bunkbed area on April 10, 2019, when a Richland employee drove a truck into Franco's vehicle. The impact propelled Franco into the air, and he struck his back on the corner of a small refrigerator. According to Franco, this incident injured his back, causing him severe pain. Franco, however, had a history of degenerative back problems, and he had suffered from back pain even before the accident. He ultimately required surgery for his lower spine in 2021.

Richland stipulated that it was responsible for the collision but disputed that the accident was the cause of Franco's pain and resulting surgery. According to Franco, however, his pre-existing back issues had stabilized before the 2019 accident,

---

[2] Franco Express, Inc. is a trucking business Franco owns. For convenience's sake, we refer to both Franco and Franco Express as "Franco."

and the incident exacerbated his back condition, necessitating his surgery. We review briefly the portions of the pretrial proceedings and trial that are relevant to this appeal.

## A. Pretrial Rulings

### 1. Illustrations

At the pretrial conference, Franco sought to admit into evidence four medical illustrations of the human spine, each presenting a different part of the back. Noting that neither party had used the drawings during the many depositions that they had taken in the case, the court denied the request but allowed the parties to use two of the drawings as demonstrative exhibits to help the jury understand the medical expert testimony to be offered at trial. The court also said it would provide the jury with a limiting instruction regarding the use of the drawings.

When Franco introduced the two illustrations at trial, true to its word, the court explained to the jurors that the purpose of the illustrations was to "orient [them] to some of the terms" and to help them understand the medical terminology they will hear throughout the trial.

### 2. Jury Instructions

During the pretrial conference, the court also provided the parties with proposed jury instructions and a special verdict form; neither side objected. Because Richland did not dispute that its driver had caused the collision, the court and the parties discussed how to frame the contested issue for the jury. The following colloquy is particularly salient:

> THE COURT: Very good. Okay. Then we've got the post-trial instructions. I have a couple of questions.

And so I've tried to do my best job of doing what I think we need. I have left out some things that you had proposed, and I want to explain what I've done and ask you for your input here. So the plaintiffs had included an instruction -- or plaintiff had included an instruction on duty of ordinary care, and defendant had proposed an instruction defining negligence. I have omitted those because we have a concession that liability isn't really contested, so this is really a damages case. So I don't think I need those, but I want to make sure I didn't miss the reason you included them.

Anything from the plaintiff?

PLAINTIFF'S COUNSEL: That's fine. I agree, Your Honor.

DEFENSE COUNSEL: Well, I don't disagree with what you say --

THE COURT: Yeah.

DEFENSE COUNSEL: -- with the exception that it's damages, but there's also causation.

THE COURT: Absolutely.

DEFENSE COUNSEL: That is a major issue in the case.

THE COURT: Yes. So it is my intent that the causation question be captured and the jury be instructed on that. They certainly have to answer that question, but I think the negligence itself is conceded, although my clerk and I were discussing how we didn't have to really phrase it in the way -- in that way. We can phrase it relatively neutrally that just says an accident happened, the defendant has accepted responsibility, and

the question is whether the injury -- whether the acci-
dent caused any injury -- damages and what they are
is essentially what we're asking, so.

DEFENSE COUNSEL: In my view of your instructions,
I'm satisfied with –

THE COURT: All right. Very good.

DEFENSE COUNSEL: -- the instructions.

Although the court remarked (perhaps inartfully) that "li-
ability isn't really contested," the court and the parties all
agreed that the jury would have to decide whether the acci-
dent caused Franco's injury and the damages he was seeking.

**B. The Trial Evidence**

In addition to his own testimony, Franco offered testi-
mony from his treating physician, Dr. Dzung Dinh, and a re-
tained expert, Dr. Alexander Ghanayem. Richland called its
own medical expert, Dr. Jerry Bauer.[3]

**1. Franco**

Franco recounted his medical history, the events sur-
rounding the accident, his subsequent back surgery and med-
ical care, and his perception of how the accident impacted his
ability to work as a truck driver. He acknowledged that, even
before the accident, he had experienced back and hip pain,
sometimes daily. To alleviate it, Dr. Dinh had prescribed epi-
dural steroid injections and a prescription pain killer. Because

---

[3] The parties presented the expert witnesses through deposition testi-
mony. The district court ruled on the parties' objections to their deposition
designations during the pretrial conference; none of those rulings are in
dispute here.

the efficacy of these treatments had waned over time, Franco planned to have surgery in 2021. Franco insisted at trial, however, that the accident greatly increased his back pain, and he was unable to work for long periods of time after the surgery.

### 2. Dr. Dinh

Dr. Dinh is a board-certified neurosurgeon specializing in complex spinal surgery. He treated Franco from July 2019 through at least 2021. According to Dr. Dinh, Franco suffered from stenosis (the degenerative narrowing of the low-back spinal canal) as well as neurogenic claudication (an increase in pain during activity caused by buildup and narrowing in the lower spinal canal). Dr. Dinh described the progression of Franco's back problems over time as evidenced by his MRIs in 2017, 2019, and 2021, and his owns accounts.

When periodic epidural steroid injections ceased to alleviate Franco's pain, Dr. Dinh recommended surgery and operated on Franco in 2021. Dr. Dinh could not say whether the accident had accelerated the degeneration of Franco's spine, but he acknowledged that Franco would have needed the surgery regardless of the accident.

### 3. Dr. Ghanayem

Franco's retained expert, Dr. Ghanayem, leads the orthopedics department at Loyola University Stritch School of Medicine. After examining Franco and reviewing his medical history, Dr. Ghanayem confirmed Franco's pre-existing spinal stenosis and degenerative disc disease. He also agreed that Franco's stenosis caused neurogenic claudication and a "clogging" of the spinal canal resulting in pain. Dr. Ghanayem acknowledged, too, that Franco had reported worsening back pain in the years preceding the accident.

That said, Dr. Ghanayem disagreed that Franco's MRIs demonstrated "a progression per se." And, in his opinion, the accident was a contributing cause of Franco's chronic back condition that necessitated surgery.

### 4. Dr. Bauer

Richland offered its own medical expert, Dr. Bauer, a board-certified neurosurgeon. Like Dr. Ghanayem, Dr. Bauer examined Franco and studied his medical history. According to Dr. Bauer, Franco started to report back pain about five years before the accident. He agreed that Franco suffered from degenerative disc disease, spinal stenosis, and scoliosis. But, in his opinion, Franco's severe back condition made him a candidate for surgery in 2017, two years before the accident. In Dr. Bauer's view, the 2019 accident had no effect on Franco's condition, and Franco would have needed lower back surgery anyway.

## II. Analysis

### A. Motions for Judgment as a Matter of Law

We begin with the district court's denial of Franco's motions for judgment as a matter of law under Fed. R. Civ. P. 50(a) and (b), which we review *de novo*. *See Venson v. Altamirano*, 749 F.3d 641, 646 (7th Cir. 2014) (citation omitted); *see also Abellan v. Lavelo Prop. Mgmt., LLC*, 948 F.3d 820, 827 (7th Cir. 2020) (reviewing the district court's denial of Rule 50(b) motion *de novo* when state substantive law applied). In doing so, we examine whether there is "a legally sufficient evidentiary basis" for the jury's verdict. *See May v. Chrysler Grp., LLC*, 716 F.3d 963, 971 (7th Cir. 2013) (per curiam) (citation omitted).

In answering this question, we construe all evidence and draw all reasonable inferences in Richland's favor. *See id*.

(citation omitted). As a result, Franco faces a difficult task here—we will reverse the verdict "only if no rational jury could have found in [Richland's] favor." *See Andy Mohr Truck Ctr., Inc. v. Volvo Trucks N. Am.*, 869 F.3d 598, 602 (7th Cir. 2017) (citation omitted).

At the close of the evidence, Franco moved for judgment as a matter of law under Rule 50(a), which the district court denied. After the verdict, Franco renewed his motion under Rule 50(b) and asserted that, based on the trial evidence, no reasonable jury could have found that the accident was not a cause of his injuries. The district court concluded otherwise, and Franco argues these rulings were erroneous.

We apply Wisconsin's substantive law in this diversity case. *See Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996). To successfully establish liability in a negligence action under Wisconsin law, Franco needed to prove that Richland owed a duty of care, it breached that duty, there was a causal relation between the conduct and the injury, and the injury resulted in actual loss or damage. *See Ollerman v. O'Rourke Co., Inc.*, 288 N.W.2d 95, 109 (Wis. 1980); *see also Webber v. Armslist LLC*, 70 F.4th 945, 958 (7th Cir. 2023).

Because Richland stipulated to the first two elements, causation was the key question in this case. "In negligence cases, the test for causation is whether the conduct at issue was a substantial factor in producing plaintiff's injury." *Emer's Camper Corral, LLC v. Alderman*, 943 N.W.2d 513, 519 (Wis. 2020) (internal quotation marks omitted). "The phrase, 'substantial factor,' denotes that the [defendant's] conduct has such an effect in producing the injury as to lead a reasonable person to regard it as a cause, using that word in the popular

sense." *Toeller v. Mutual Serv. Cas. Ins. Co.*, 340 N.W.2d 923, 926 (Wis. Ct. App. 1983) (citation omitted).

On appeal, Franco argues that the evidence supports only one conclusion—that the accident led to his back pain, surgery, and the associated damages. Indeed, Franco asserts that the defense presented *no* evidence that his pre-existing conditions were causes of his pain and eventual surgery. But this argument flies in the face of the record.

Dr. Dinh, the neurosurgeon who performed Franco's back surgery, testified that Franco's MRIs from 2017, 2019, and 2021 revealed the progressive nature of Franco's conditions prior to the accident. Counsel asked Dr. Dinh specifically if Franco's collapsed disc space was degenerative, and Dr. Dinh replied: "Absolutely, in his case …. Because it was there before the accident." And in direct contradiction to Franco's present argument, Dr. Dinh concluded that the accident did not have a direct causal effect on Franco's condition requiring surgery.

Similarly, Dr. Bauer, after examining Franco and reviewing his medical history, opined that Franco's degenerative back condition made him a candidate for the surgery in as early as 2017—two years before the accident. And he testified that Franco's degenerative back condition existed prior to the accident.

In fact, both Dr. Dinh and Dr. Bauer noted explicitly that Franco would have needed the surgery regardless of the accident. And Franco's own expert, Dr. Ghanayem, went so far as to opine that the accident was a contributing cause to Franco's back condition, not the *sole* cause, as Franco contends here.

Under Wisconsin law, "[c]ausation is not established where the harm would have occurred even absent the defendant's negligence." *Webber*, 70 F.4th at 963 *(citing Beacon Bowl, Inc. v. Wis. Elec. Power Co.*, 501 N.W.2d 788, 807 (Wis. 1993)). Because a reasonable jury could find from the evidence that the accident did not cause the condition that led to Franco's eventual surgery, the district court did not err in denying his Rule 50 motions.

**B. Rule 59 Motion for a New Trial**

Turning to Franco's Rule 59 motion for a new trial, we review the district court's denial of the motion for abuse of discretion. *Venson*, 749 F.3d at 656 (citation omitted). "A new trial is appropriate if the jury's verdict is against the manifest weight of the evidence or if the trial was in some way unfair to the moving party." *Id.* (citation omitted).

On appeal, Franco contends that he is entitled to a new trial under Rule 59. But he did not develop this argument, either before the district court or here. Accordingly, we are under no obligation to address it. *See United States v. Adams*, 625 F.3d 371, 378 (7th Cir. 2010) ("failing to develop [ ] argument in [ ] meaningful way" waives argument); *United States v. Elst*, 579 F.3d 740, 747 (7th Cir. 2009) ("Perfunctory and undeveloped arguments as well as arguments unsupported by pertinent authority are waived.") (citation omitted); *see also United States v. Hook*, 471 F.3d 766, 775 (7th Cir. 2006).

It is worth noting, however, that Franco misunderstands the standard that governs a motion for a new trial under Rule 59. For example, he asserts that "*there was evidence* the collision events caused the physical problems to the plaintiff" and that "[a] *fair conclusion* is the pain level is permanent and increased

in severity and duration and resulted directly from defendant's actions." He also says that Richland presented no evidence in rebuttal to Franco's theory that the accident was a cause of Franco's spinal injury. But merely pointing to a smattering of favorable evidence, while wholly ignoring contrary facts, does not demonstrate that the jury's verdict was contrary to the manifest weight of the evidence. Nor does it show that the trial was somehow unfair to Franco. Accordingly, the district court did not abuse its discretion in denying Franco's request for a new trial.

## C. Jury Instructions

Next, Franco challenges the court's preliminary and post-trial jury instructions, as well as the special verdict form. But, again, Franco did not challenge the jury instructions or verdict form before the district court, so our review could end here. For the sake of completeness, however, we note that, even if he had, we would still affirm.

In its preliminary instructions to the jury, the district court explained that "Richland admits that its driver was negligent, but the parties dispute what damages -- what the plaintiffs' damages are, so this is a case about the damages." In Franco's view, the court's statement "is reasonably interpreted there [sic] is no dispute of causal relationship of defendant's actions to the plaintiff's injuries." The court, however, also instructed the jury that they needed to decide "whether plaintiffs have proved that Richland's negligence caused them to suffer damages." Because, read as a whole, the court's preliminary instructions neither misled the jury on the issue in dispute nor prejudiced Franco, it did not err.

Franco also takes issue with the special verdict form. The form included two questions: "Question 1 asks whether the 2019 accident was a cause of the plaintiffs' injuries," and if the jurors answered yes to Question 1, they were then asked to "decide in Question 2 what amount of money, if any, would fairly and adequately compensate plaintiffs for the harm caused by the 2019 accident."

According to Franco, Richland already had stipulated that its driver had caused the accident and, thus, both Questions 1 and 2 were incorrect. But this confuses Richland's concession that its employee's negligence caused the accident with whether the resulting impact caused Franco's injuries that required surgery. Answering the latter question was the entire point of the trial.

We have been clear that district courts have "substantial discretion with respect to the precise wording of jury instructions so long as the final result, read as a whole, completely and correctly states the law." *Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005) (citation omitted). Moreover, an erroneous jury instruction is not prejudicial unless, "considering the instructions as a whole, along with all of the evidence and arguments, the jury was misinformed about the applicable law." *Susan Wakeen Doll Co. v. Ashton–Drake Galleries*, 272 F.3d 441, 452 (7th Cir. 2001) (citation omitted). The court's instruction and the explanation of causation on the special verdict form accurately states Wisconsin law for negligence cases, so we see no error. *See Beacon Bowl*, 501 N.W.2d at 807.

## D. Demonstrative Exhibits

Finally, we review whether the district court abused its discretion by excluding two of Franco's demonstrative

exhibits. *See United States v. Arroyo*, 406 F.3d 881, 886 (7th Cir. 2005) (citation omitted). As always, "[w]e afford the district court considerable discretion in the handling of exhibits during the course of a trial as well as during jury deliberations." *Id.* (citation omitted); *Nachtsheim v. Beech Aircraft Corp.*, 847 F.2d 1261, 1278 (7th Cir. 1988) ("Whether to admit demonstrative evidence … is a decision committed to the broad discretion of the trial court.").

During the parties' final pretrial conference, Franco sought to admit in evidence four medical illustrations, labeled A, B, C, and D, depicting various parts of the human anatomy. After hearing from the parties, the district court denied the request but allowed two illustrations (A and D) to be used as demonstrative exhibits.

On appeal, Franco takes issue with the court's refusal to allow the other illustrations (B and C) to be used as demonstratives. He asserts that illustration B, entitled "Spinal Nerves & Sensory Dermatomes," was "the most important drawing to tie Franco's testimony to the expert's testimony" so that the jury could "verify the injury site with pain references." In Franco's mind, illustration C, entitled "Autonomic Nervous System," also would have been helpful for the jury to understand "the interplay between the vertebrae/nerves" and certain body functions. The district court, however, explained that illustrations A and D would be sufficient to provide the jurors with an "orientation" of the anatomy of the spine and that they were "more than is necessary." Such a reasoned decision was well within its discretion.

### III. Conclusion

For the reasons stated above, the judgment of the district court is AFFIRMED.